UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| DOUGLAS B. STALLEY, | ) | |
| Plaintiff, | ) ) ) | |
| | ) | Case No. 1:06-CV-194 |
| v. | ) ) | Chief Judge Curtis Collier |
| ERLANGER HEALTH SYSTEM and JOHN DOES 1 through 10, | ) ) ) | |
| Defendants. | ) ) | |
| | | |
| DOUGLAS B. STALLEY, | ) ) | |
| Plaintiff, | ) ) | |
| | ) | Case No. 2:06-CV-216 |
| v. | ) ) | Chief Judge Curtis Collier |
| MOUNTAIN STATES HEALTH ALLIANCE and JOHN DOES 1 through 10, | ) ) ) | |
| Defendants. | ) ) | |
| | | |
| DOUGLAS B. STALLEY, | ) ) | |
| Plaintiff, | ) ) | |
| | ) | Case No. 2:06-CV-217 |
| v. | ) ) | Chief Judge Curtis Collier |
| WELLMONT HEALTH SYSTEMS, INC. and JOHN DOES 1 through 10, | ) ) ) | |
| Defendants. | ) ) ) ) | |
| DOUGLAS B. STALLEY, | ) | |

|                                    | ) |                          |
|---|---|---|
| Plaintiff,                         | ) |                          |
|                                    | ) | Case No. 2:06-CV-265     |
| v.                                 | ) |                          |
|                                    | ) | Chief Judge Curtis Collier |
| BAPTIST HEALTH SYSTEM OF EAST      | ) |                          |
| TENNESSEE, INC. and JOHN DOES      | ) |                          |
| 1 through 10,                      | ) |                          |
|                                    | ) |                          |
| Defendants.                        | ) |                          |
|                                    | ) |                          |
|                                    | ) |                          |
|                                    | ) |                          |
| DOUGLAS B. STALLEY,                | ) |                          |
|                                    | ) |                          |
| Plaintiff,                         | ) |                          |
|                                    | ) | Case No. 3:06-CV-359     |
| v.                                 | ) |                          |
|                                    | ) | Chief Judge Curtis Collier |
| COVENANT HEALTH and JOHN DOES      | ) |                          |
| 1 through 10,                      | ) |                          |
|                                    | ) |                          |
| Defendants.                        | ) |                          |
|                                    | ) |                          |

## MEMORANDUM

### I. INTRODUCTION

Before the Court are five separate cases filed by the same plaintiff, Douglas B. Stalley ("Plaintiff"), against five healthcare systems and numerous "John Does" (collectively, "Defendants"). (Case No. 1:06-CV-194; Case No. 2:06-CV-216, Case No. 2:06-CV-217; Case No. 2:06-CV-265; Case No. 3:06-CV-359.) In each case, the respective Defendant has filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and/or 12(b)(6). These five motions to dismiss are: (1) Case No. 1:06-CV-194, Court File No. 3; (2) Case No. 2:06-CV-216, Court File No. 5; (3) Case No. 2:06-CV-217, Court File No. 6; (4) Case No. 2:06-CV-265, Court File No. 4; (5) Case No. 3:06-

CV-359, Court File No. 15. In January 2007, this Court decided to coordinate resolution of these motions. (*E.g.*, Case No. 2:06-CV-265, Court File No. 12.) For purposes of this memorandum, *Stalley v. Baptist Health System of East Tennessee* (Case No. 2:06-CV-265) is designated as the "lead" and all citations, unless otherwise noted, are to its Court File.

By Order attached to this Memorandum, for the reasons set forth below, this Court grants each respective Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1). With the exception of defendant Covenant Health's Motion to Dismiss (Case No. 3:06-CV-359, Court File No. 15), this Court grants each respective Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and dismisses Plaintiff's respective complaints with prejudice.

## II.   MOTION TO STAY

Plaintiff alleges each of the Defendants violated the Medicare Secondary Payer Act ("MSP"), 42 U.S.C. § 1395y(b). (Court File No. 1-2, ¶¶ 6-16.) Plaintiff and his associate Erin Brockovich have filed 49 nearly identical complaints in jurisdictions across the country. Kris Hundley, *Brockovich Teams Up With Local Firm*, St. Petersburg Times, Dec. 21, 2006. Many of these complaints have already been dismissed. (*See* Court File Nos. 5-7, Ex. B1-33, where defendant Baptist Health System of East Tennessee, Inc. provided multiple examples).

In fact, in the Middle District of Tennessee, Judge Echols dismissed Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). *Stalley v. Summer Reg'l Health Sys., Inc.*, Case No. 2:06-CV-74 (M.D. Tenn. Jan. 18, 2007). In the Western District of Tennessee, Judge McCalla dismissed Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(1). *Stalley v. Methodist Healthcare, Inc., et al.*, Case No. 06-CV-2605 (W.D. Tenn. Dec. 22, 2006).

Plaintiff has appealed these dismissals. Plaintiff moves this Court to stay its decision pending the outcome of such appeals in the United States Court of Appeals for the Sixth Circuit. (Court File No. 13.) However, Plaintiff has not carried the heavy burden of demonstrating that Defendants will not suffer harm from delaying resolution of the Motions to Dismiss. *Ohio Envtl. Council v. U.S. Dist. Ct.*, 565 F.2d 393, 396 (6th Cir. 1977). This Court declines to stay its opinion and will join its sister courts in dismissing Plaintiff's actions. Judicial efficiency is served by dealing with these five pending cases, and allowing Plaintiff to consolidate the appeal if he so chooses.[1] *See Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936) ("Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.").

## III. FACTS AND PROCEDURAL HISTORY

Plaintiff brings his complaints on behalf of the United States (Court File No. 1-2, ¶ 2.) Defendants are hospital systems and Medicare participant-providers (*Id.* at ¶ 3), as well as "John Doe" insurance companies, "engaged in the conduct alleged herein" (*Id.* at ¶ 4). Medicare is a federally sponsored health insurance program which pays the costs of hospital and post-hospital

---

[1] As defendant Covenant Health points out (Case No. 3:06-CV-359, Court File No. 25, p. 2), the briefing schedule is identical in the two pending appeals. Plaintiff filed nearly identical complaints and responses in each of its actions. This Court's opinion is grounded on the same bases as the opinions of Judge Echols and Judge McCalla. Plaintiff should not encounter great hardship in having to file a third, substantially similar brief on appeal. However, it must be noted that Judge Todd in the Western District of Tennessee granted Plaintiff's motion to stay. *See Stalley v. W. Tenn. Healthcare, Inc. et al.*, Case No. 06-1204-T/An; *see also* Court File No. 15 (Plaintiff's Notice of Supplemental Authority). This decision is distinguishable as Judge Todd had one case pending before him; five complaints and five impatient Defendants are before this court.

services, home health, and hospice care for individuals who are (1) over age 65, (2) disabled, or (3) have end stage renal disease. 42 U.S.C. § 1395c.

Under the MSP, Medicare is a back-up payer of healthcare claims; an individual's "primary plan" must first cover costs. 42 U.S.C. § 1395y(2)(A). The MSP permits Medicare to conditionally pay a provider if a primary plan has not or will not promptly remit payment for healthcare services; "[a] primary plan, and an entity that receives payment from a primary plan, shall reimburse the appropriate Trust Fund . . . if it is demonstrated that such primary plan has or had a responsibility to make payment." 42 U.S.C. § 1395y(b)(2)(B). A "primary plan" is a group health plan, workers' compensation, automobile, liability, or no-fault insurance, or a business which carries its own risk. 42 U.S.C. § 1395y(b)(2)(A).

A primary plan's responsibility to reimburse Medicare "may be demonstrated by a judgment, a payment conditioned on a waiver or release, or other means." 42 U.S.C. § 1395y(b)(2)(B). Reimbursement claims are entitled to double damages and may be brought by (1) the United States Government or (2) a private citizen acting pursuant to a "private cause of action for damages." 42 U.S.C. §§ 1395y(b)(2)(B)(iii) & (b)(3).

Plaintiff alleges numerous instances of harm, caused by Defendants' agents, to Medicare beneficiaries, and for which Defendants were liable. (Court File No. 1-2, ¶ 6.) According to the complaints, though Defendants' actions caused the ulcers, malnutrition, preventable infections, and other injuries, Defendants billed for and received Medicare monies to treat such injuries. (*Id.* at ¶¶ 6-8, 10.) According to the complaints, Defendants had notice of such "improper billing" yet failed to reimburse Medicare as required by the MSP. (*Id.* at ¶¶ 11-12.) Plaintiff seeks to exercise his

private right of action under 42 U.S.C. § 1395y(b)(3)(A), and to recover double damages for the monies Defendants did not reimburse to Medicare. (*Id.* at ¶ 17.)

## IV. DISCUSSION

### A. Defendants' Motions to Dismiss Under Fed. R. Civ. P. 12(b)(1).

1. Legal standard under Fed. R. Civ. P. 12(b)(1)

Where subject matter jurisdiction is challenged under Fed. R. Civ. P. 12(b)(1), the party asserting jurisdiction bears the burden of establishing it, *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990), and of sufficiently pleading each element of Article III standing to support federal subject matter jurisdiction, *Courtney v. Smith*, 297 F.3d 455, 459 (6th Cir. 2002).

2. Plaintiff has not suffered an injury and therefore lacks Constitutional standing

Four of the five Motions to Dismiss argue that this Court lacks subject matter jurisdiction to consider Plaintiff's claims because Plaintiff lacks constitutional standing to bring the instant suits. (*E.g.*, Case No. 2:06-CV-216, Court File No. 7, p. 7.) When the Court applies the "irreducible" minimum test for standing, the Court considers three elements: (1) did Plaintiff suffer an injury in fact, that is, an invasion of a concrete, specific, legally protected interest; (2) is Plaintiff's injury fairly traceable to Defendants' alleged wrongful conduct; and (3) can the Court's action redress Plaintiff's injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations omitted).

Here, Plaintiff does not claim to have suffered any cognizable injury in fact; Plaintiff concedes he has not and does not expect to suffer an injury in fact from the Defendants' alleged

6

MSP violations and is suing on behalf of the government (Court File No. 5, p. 6). Nonetheless, this Court must analyze jurisdiction and standing though the parties may be willing to concede it. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998). Applying the test, this Court finds Plaintiff to lack Article III standing since he, himself, has not suffered any injury in fact.

3. Plaintiff lacks standing because the MSP is not a Qui Tam statute

Plaintiff claims the MSP is a *qui tam* statute, and Plaintiff therefore has standing in the name of the United States (Court File No. 10, pp. 6-13.) A *qui tam* action allows a private a person to sue on behalf of the federal government, and the government is understood to partially assign its rights to the *qui tam* claim to such private person. *See Vt. Agency of Natural Res. v. United States ex rel Stevens*, 529 U.S. 765, 773 (2000). The False Claims Act ("FCA") is the best known *qui tam* statute. In comparing the MSP and FCA, courts note obvious similarities—and four dispositive differences. First, the FCA's plain language empowers private persons to sue on behalf of the United States.

> A person may bring a civil action for a violation of section 3729 for the person and for the United States Government. The action shall be brought in the name of the Government. The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting.

31 U.S.C. § 3730(b)(1). By contrast, the MSP does not explicitly empower a private person to sue for the United States; it instead provides two clear and distinct causes of action, one for the government and one for private damages. *Compare* 42 U.S.C. § 1395y(b)(2)(B)(iii) *with* 42 U.S.C. § 1395y(b)(3)(A). It is well-settled there is no common law right to sue on behalf of the United States; such actions must be authorized by statute. *See, e.g., U. S. ex rel. Burnette v. Driving Hawk,*

7

587 F.2d 23, 24-25 (8th Cir. 1978) (citing *Conn. Action Now, Inc. v. Roberts Plating Co., Inc.*, 457 F.2d 81, 84 (2d Cir. 1972);1549;1549).

Second, the MSP does not contain the typical procedural safeguards of a *qui tam* statute. *United States ex rel. Taxpayers Against Fraud v. Gen. Elec. Co.*, 41 F.3d 1032, 1041 (6th Cir. 1994) (the Executive Branch must retain control over a *qui tam* relator to satisfy the Take Care Clause, U.S. Const. art. II § 3). The MSP contains no such procedures. For example, since an FCA claim is brought on behalf of the government, the action may be dismissed only with consent of a federal court and the Attorney General. 31 U.S.C. § 3730(b)(1). The government must review a *qui tam* complaint, and the relator (the individual who initiates a *qui tam* action) may not serve a defendant absent a court order. 31 U.S.C. § 3730(b)(2). The government has power to take over the action. 31 U.S.C. § 3730(b)(4). *Cf. Manning v. Utils. Mut. Ins. Co.*, 254 F.3d 387, 394-95 (2d Cir. 2001) (comparing the MSP and FCA and noting procedural differences, such as that the government is subrogated to the citizen under the MSP whereas, under the FCA, the government must be allowed to participate and may control a lawsuit's direction, even over a relator's objections).

Third, the MSP permits a private plaintiff to recover double damages and subrogates the federal claim to the individual's claim. 41 U.S.C. § 1395y(b)(2)(B)(iv). In a true *qui tam* action, the relator instead receives a portion or percentage of the government's recovery. This structure is apparent in the FCA and of older "informer" statutes. *See Brockovich v. Sharp Healthcare et al.*, Case No. 06-CV-1628, p. 6 n.2–n.3 (S.D. Cal. Nov. 7, 2006) (collecting and comparing recovery schemes under recognized *qui tam* statutes).

Finally, legislative history is instructive, since Congress amended the MSP only ten days after amending the FCA. 1986 U.S.C.C.A.N. 3868, 5266 (1986). Congress included explicit *qui*

*tam* provisions and safeguards in the FCA, while adding an explicit private right of action to the MSP without such provisions. *Compare* Omnibus Budget Reconciliation Act of 1986, Pub. L. No 99-509, § 9319, 100 Stat. 1874 (1986) *with* False Claims Amendments Act 1986, Pub. L. No. 99-562, 100 Stat. 3153 (1986). Congress had opportunity and example, if Congress had the desire, to include similar *qui tam* provisions in the MSP. Congress instead chose a different route for the MSP. *See Marx v. Centran Corp.*, 747 F.2d 1536, 1545 (6th Cir. 1984) ("difference between the two subsections leads to the conclusion that 'when Congress wished to provide a private damages remedy, it knew how to do so and did so expressly'").

In sum, this Court agrees with its sister courts: the MSP is not a *qui tam* statute. Therefore, as Plaintiff lacks standing on his own behalf and on behalf of the United States. Defendants Motions to Dismiss must be granted pursuant to Fed. R. Civ. P. 12(b)(1), as this Court lacks subject matter jurisdiction because Plaintiff does not have standing to bring his claim.

**B.     Defendants' Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6)**

1. Legal standard under Fed. R. Civ. P. 12(b)(6)

Defendant Covenant Health concedes (Case No. 3:06-CV-359, Court File No. 16, p. 2) that Plaintiff has standing under the Sixth Circuit's decision in *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 444 (6th Cir. 2006). *Moore* is an ERISA case in which the plaintiff alleged an injury in fact when his putative employer failed to provide disability benefits. *Id.* at 443. The district court held that the plaintiff was not a "participant" under the terms of the ERISA statute. *Id.* at 441. Nonetheless, the plaintiff had standing to bring the lawsuit because he had raised a colorable claim and alleged an actual injury. *Id.* at 445. This Court considers *Moore* to be wholly inapplicable to

the instant case, in which Plaintiff has suffered no "colorable claim" – Plaintiff has suffered no injury whatsoever.

Though *Moore* is inapposite, this Court reviews Plaintiff's claims under Fed. R. Civ. P. 12(b)(6) as requested by the Defendants' Motions to Dismiss. The standard of review for a 12(b)(6) motion is the same standard of review as for a judgment on the pleadings.[2] *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998). The Court must (1) construe the complaint in the light most favorable to Plaintiff, (2) accept as true all factual allegations in the complaint, and (3) determine if there is any set of facts Plaintiff could prove which would entitle Plaintiff to relief. *Tritent Int'l Corp. v. Kentucky*, 467 F.3d 547, 553-54 (6th Cir. 2006). The Court accepts factual allegations as true but is not required to accept legal conclusions or "unwarranted factual inferences." *Id.* at 544 (citations omitted).

> 2. Plaintiff failed to allege Defendants' "responsibility" under the MSP sufficient to survive a 12(b)(6) motion to dismiss

An MSP claim against a primary plan must allege two elements, (1) such plan's responsibility to pay for healthcare services, and (2) such plan's failure to remit appropriate payment to Medicare. *Glover v. Phillip Morris USA* ("*Glover I*"), 380 F. Supp. 2d 1279, 1290 (M.D. Fla. 2005). Defendants claim Plaintiff's complaint fails to sufficiently allege that Defendants' acts triggered the MSP's reimbursement obligations. (*E.g.*, Case No. 2:06-CV-216, Court File No. 6, p. 13) (Plaintiff contends Defendants "at unspecified times committed unspecified malpractice on

---

[2] Plaintiff's Response to defendant Covenant Health's Motion to Dismiss points out that Covenant Health filed an answer to Plaintiff's complaint, and that generally a 12(b)(6) motion is made prior to pleading. (Case No. 3:06-CV-359, Court File No. 19, p. 2.) Nonetheless, Plaintiff concedes a "Rule 12(b)(6) defense of failure to state a claim upon which relief may be granted can be raised after an answer has been filed by motion for judgment on the pleadings pursuant to Rule 12(c)." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987). As noted above, the standard of review is the same.

10

various unspecified patients, and billed unspecified amounts for treatment of that malpractice to Medicare rather than absorbing or paying for the costs themselves. As every court considering the question has held, MSP liability cannot be premised upon such speculative allegations.") Plaintiff counters he "need not allege the particulars of each instance of injury" to survive a 12(b)(6) motion. (Case No. 2:06-CV-216, Court File No. 11, p. 22) (citing *United States v. Baxter*, 345 F.3d 866, 883-84 (11th Cir. 2003).)

Plaintiff argues he sufficiently alleged the MSP elements, but this Court disagrees. Plaintiff had to allege Defendants were responsible for reimbursing Medicare, as demonstrated by a judgment, a settlement, or "by other means." 42 U.S.C. § 1395y(b)(2)(B)(ii). An MSP claim is not ripe until Defendants' responsibility has been shown by something akin to a judicial determination or a settlement. *See Glover v. Liggett Group, Inc. ("Glover II")*, 459 F. 3d 1304, 1309 (11th Cir. 2006) ("Until Defendants' responsibility to pay for a Medicare beneficiary's expenses has been demonstrated (for example, by a judgment), Defendants' obligation to reimburse Medicare does not exist under the relevant provisions"); *Mason v. Am. Tobacco Co.*, 346 F.3d 34, 43 (holding that a pending tort claim did not adequately allege responsibility since the claim was not resolved); *United Seniors Ass'n v. Phillip Morris USA*, 2006 U.S. Dist. LEXIS 60729 (D. Mass. Aug. 28, 2006) (applying *Glover II*); *Frazer v. CNA Ins. Co.*, 374 F. Supp.2d 1067, 1078 (N.D. Ala. 2005) ("all cases . . . have presumed that such a cause of action and the relief afforded by the [MSP] arises only when a discrete claim has accrued"); *Glover I*, 380 F. Supp. 2d. at 1290-91 (applying *ejusdem generis* concept and concluding the "other means" language relates to previously established obligations or agreements to pay, and not to unresolved, unestablished tort claims); *see also* Centers for Medicare & Medicaid Services, *Medicare Secondary Payer Manual* Ch. 7 § 50.4.1 (Apr. 25,

2005) ("Medicare's claim comes into existence by operation of law . . . when payment for medical expenses that Medicare conditionally paid for has been made by a third party payer").

Plaintiff argues that Defendants' internal records show "sentinel events" of malpractice for which Defendant should not have billed Medicare (*e.g.*, Court File No. 1-2, ¶ 12); however, internal records are in the class of evidence supporting a "determination of responsibility" and not akin to a judgment, settlement, or "contractual obligation" as required by the MSP.

Plaintiff's Response to the Motion to Dismiss attempts to base his liability theory in contract or quasi-contract (Court File No. 10, pp. 18-22). If Plaintiff succeeded in restating his complaint, the above-cited cases would be distinguishable, as the allegations in each are torts claims. However, Plaintiff's complaint alleges tort claims as well, such as medical malpractice, fraud, intentional concealment, misrepresentation, and breach of fiduciary duty. Therefore, the above cases apply. Plaintiff's complaint fails under the "responsibility" prong of the MSP. *Glover II*, 459 F. 3d at 1309.

Moreover, it is worth noting, as Defendants do (Case No. 2:06-CV-216, Court File No. 12, p. 11), that Plaintiff has no contractual privity or relationship with Defendants. If the party with whom Defendants do have Provider Contracts, the Centers for Medicare & Medicaid Services ("CMS") thought Defendants to be in breach, or if the federal government thought Defendants were violating Medicare regulations, CMS or the Attorney General could sue under the MSP. 42 U.S.C. § 1395y (b)(2)(B)(iii).

Again, under 12(b)(6), the Court must accept factual allegations as true; however, the Court need not accept unwarranted factual inferences. *Tritent Int'l Corp.*, 467 F.3d at 544. Here, Plaintiff asserts unidentified injuries and "improper billing" by Defendants for which Medicare should be reimbursed. The complete absence of specificity as to Defendants' malpractice and resultant

responsibility to pay, in an area (medical malpractice) which is very fact-specific and subject to evolving professional standards, qualifies as "unwarranted factual inferences." Plaintiff seeks to rework his complaint to allege contractual and administrative statute violations, but these, too, require Defendants' responsibility to reimburse Medicare to be established.

## V. CONCLUSION

Plaintiff asks this Court to extend the MSP—and federal jurisdiction—beyond what Congress intended[3] and CMS administers. Moreover, Plaintiff seeks to circumvent Fed. R. Civ. P. 23, which regulates the litigation of class action claims. Plaintiff reads the MSP to "allow individuals acting as private attorney generals [sic] to litigate the state tort liability of a defendant towards thousands of Medicare beneficiaries—as a predicate to showing MSP liability—without complying with class action requirements." *Glover II*, 459 F.3d at 1309. This Court, like many courts considering the same complaint, does not so interpret the MSP. Accordingly, this Court finds Plaintiff's complaint fails to state a claim for which relief may be granted under Fed. R. Civ. P. 12(b)(6).

This Court will grant Defendants' motions and Plaintiff's five complaints are dismissed with prejudice.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

[3] The district court in *Glover I* extensively reviewed the legislative history of the 2003 MSP amendments and found "no statement anywhere" subjecting an alleged, unadjudicated tortfeasor to MSP liability. *Glover I*, 380 F. Supp. 2d at 1297-98. The absence of such legislative history "is more significant when one considers the consequences of plaintiffs' position, namely that virtually every state law tort claim involving a Medicare beneficiary would become a federal lawsuit for double damages under the MSP." *Id.*

13